## FLEMING v. UNITED STATES.

### No. 7846.

Circuit Court of Appeals, Sixth Circuit.

Sept. 18, 1939.

On Rehearing Nov. 14, 1939.

See 107 F.2d 952.

J. S. Edmondson, of Memphis, Tenn. (Dixon, Williams & Edmondson, of Memphis, Tenn., on the brief), for appellant.

Thomas E. Walsh, of Washington, D. C. (William McClanahan and C. P. J. Mooney, both of Memphis, Tenn., and Julius C. Martin, and Wilbur C. Pickett,

both of Washington, D. C., on the brief), for the United States.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This action was originally instituted January 22, 1932, by Warner W. Fleming to recover on a $10,000 war risk insurance policy issued to him on his entrance into the United States Army in February, 1918. He was discharged May 21, 1919, and died of pulmonary tuberculosis, February 4, 1936. Appellant, Mrs. Nora A. Fleming, was his beneficiary and executrix and the action was revived in her name.

The assured paid no premiums on the policy after his discharge. However, appellant contends it matured because of total and permanent disability while in the service.

On the trial of the cause, at the conclusion of appellant's evidence, the court directed a verdict for the United States on the ground of insufficient evidence, hence this appeal.

On his induction into the Army on February 14, 1918, assured was thoroughly examined and found to be in good health with the exception of the presence of hemorrhoids. He was admitted to a camp hospital in France March 18, 1919, suffering from hemorrhoids, external bleeding, and was returned to the United States March 22, 1919, in good condition except for this ailment and confined in the Debarkation Hospital at New York from April 28, 1919, until May 5, 1919, with a general diagnosis of hemorrhoids, and on May 6, 1919, was sent to the Base Hospital at Camp Gordon, Georgia, where he was treated and discharged in good condition and returned to duty May 8, 1919.

He was examined by an army surgeon May 19, 1919, the date of his final discharge and found in good physical condition. At this time he reported neither disability nor impairment of health.

In his application July 14, 1919, for disability benefits, he stated he had bad stomach trouble. On September 29, 1919, Dr. H. C. Currie gave the Veterans' Administration an affidavit that assured was suffering from chronic indigestion and that he was of opinion he could "perform about 50% of his working capacity."

Dr. C. L. Hays examined the assured on November 5, 1919, and reported his condition as "poor," "chest, diminished expansion, rales in apex both lungs, has had cough, looks to be tubercular, has considerable trouble with indigestion. Diagnosis: T. B. suspected tuberculosis." He was treated in 1920 by Dr. Currie for active tuberculosis, which he said could have been arrested with treatment. He entered the Davidson County Tuberculosis Hospital at Nashville, Tennessee, January, 1920, for treatment, where he remained until May, 1920, when he was discharged.

In August, 1920, a physical examination by Dr. J. W. Hodges showed tuberculosis, pulmonary, chronic, active with unfavorable prognosis. In December, 1920, he entered the National Sanatorium at Johnson City, Tennessee, where he remained until August 27, 1922. The assured was examined by the Board of Physicians at this hospital on April 25, 1922, and was discharged, the report showing the tuberculosis "apparently arrested."

From August 7, 1922, to September 16, 1922, he was hospitalized at the Veterans' Administration Hospital at Oteen, North Carolina, where a board of three physicians reported a "chronic bronchitis."

From this time until June, 1931, he had no hospital treatment. On August 5, 1935, he entered the Veterans' Hospital at Outwood, Ky., where he remained until October 5, 1935. He entered the Veterans' Administration Diagnostic Center, Cincinnati, Ohio, in June, 1931, where the diagnosis showed pulmonary tuberculosis, moderately advanced, complicated with pleurisy and sinus infection. Rest and treatment were recommended with the comment that "patient should be greatly improved and complete arrestment of the tuberculous lesions brought about."

The disease steadily progressed to the date of assured's death, during all of which time he was treated regularly by his private physician.

Eight lay witnesses testified that assured's disability was such that he could not do hard labor after he was discharged from the army and that he was thin and did no work of a substantial nature after his return. Assured's work record is not persuasive one way or the other. When he was inducted into the service he weighed 142 pounds and when discharged weighed 150 pounds.

The phrase "total and permanent disability" in a war risk insurance policy

cannot be accurately defined. Each case must be governed by the particular facts and circumstances peculiar to it. It is essential that the assured or his beneficiary show by a fair preponderance of the evidence that while the policy was in force, he suffered bodily impairment from disease or injury to such an extent that he could not thereafter continuously follow any substantially gainful occupation without physical harm.

Considering appellant's evidence as a whole, it may be inferred that the disease from which assured died had its beginning during the life of the policy. However, there is no reasonable inference, deduction or conclusion arising therefrom that it totally or permanently disabled him before the policy lapsed. · Compare United States v. Middleton, 6 Cir., 81 F.2d 205. The judgment of the District Court is affirmed.